**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 10-cv-02160-MSK-CBS

**TRAVELERS INDEMNITY COMPANY,**

      **Plaintiff,**

v.

**BOARD OF COUNTY COMMISSIONERS FOR LARIMER COUNTY,**

      **Defendant.**

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Larimer County's Motion for Partial Summary Judgment **(# 40)**, Plaintiff Traveler's response **(# 47)**, and Larimer County's reply **(# 52)**; and Traveler's Motion for Summary Judgment **(# 41)**, Larimer County's response **(# 53)**, and Traveler's reply **(# 55)**.

### FACTS

It appears that the material facts are undisputed, and resolution of this motion requires only interpretation and application of the terms of an insurance contract.  In or about 2003, the Neenan Company ("Neenan") constructed several steel buildings on the grounds of the Larimer County Fairground Complex.  It appears to be undisputed by the parties that those buildings suffered from latent construction defects relating to the design of the roof system, but that no patent defects existed when Neenan turned over the buildings to Larimer County.

In December 2006, a series of heavy snowfalls resulted in damage to several buildings at

1

the Fairground Complex.  As a result of snow loading on the roof, the Exhibition Hall,

experienced a partial collapse.  Larimer County promptly filed a claim regarding that damage

with Travelers, who provided coverage to Larimer County under an all-risk policy.  Travelers

accepted and paid the claim for damage to the Exhibition Hall.

At some later point in time,  Larimer County observed displacement of the purlins[1] in

several other Fairground buildings constructed by Neenan.  Larimer County retained an expert to

investigate, and the expert concluded that the displacement of the purlins resulted from the

combination of  two factors: (i) the defective design of the roofs; and (ii) the stress placed on the

roofs by the snow loading.[2]  Larimer County then amended its claim with Travelers, seeking

coverage for the damage to the purlins in these buildings.

Travelers denied coverage for the major components[3] of the amended claim relating to

the additional buildings.  It cited three specific policy exclusions: the "defective construction"

exclusion, the "collapse of buildings" exclusion, and the "ordinance or law" exclusion.

Travelers then commenced this action seeking a declaratory judgment that the policy

---

[1]Greatly simplified (perhaps overly so), in buildings such as these, the roof system consists of three components.  First, rafters or trusses rest on foundation walls and support beams, providing support for and defining the shape of the roof.  Second, purlins are horizontal steel beams that run atop of and perpendicular to the trusses, joining the trusses together and providing lateral stability across the trusses.  The purlins also supply a surface to which the roof deck – the third component – is then attached.

[2]It does not appear that Larimer County is contending that the damage to the additional buildings resulted <u>solely</u> from the snow loading, such that the defective design or construction of the buildings played no role.  Indeed, in its response brief, Larimer County appears to concede, at least for purposes of argument, that "those snowstorms may not have caused any damage had the buildings been designed and built correctly." *Docket* # 53 at 9.

[3]Travelers provided coverage for certain minor items of damage to the additional buildings, primarily involving damage to gutters.

does not provide coverage for amended claims relating to the additional buildings.  Larimer County has responded with counterclaims alleging, among other things, Travelers' breach of the insurance policy by failing to pay benefits.  Both parties have moved **(# 40, 41)** for summary judgment on the question of whether the displacement of the purlins buildings is covered by the policy.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P.

56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and  enters

judgment.

        If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required.  If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

        This case involves cross-motions for summary judgment.  "Because the determination of

whether there is a genuine dispute as to a material factual issue turns upon who has the burden of

proof, the standard of proof and whether adequate evidence has been submitted to support a

*prima facie* case or to establish a genuine dispute as to material fact, cross motions must be

evaluated independently."  *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp.

2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*,

226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th

Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one

does not require the grant of another.").

### B.  General principles relating to interpretation of insurance policies

Because this Court's subject-matter jurisdiction arises due to the diversity of citizenship of the parties, the Court applies Colorado's substantive law governing the interpretation of insurance policy language.  *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-27 (1996).  Under Colorado law, insurance policies are construed under the same traditional principles that govern the interpretation of any contract. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999).

When attempting to construe language in an insurance policy, the Court's ultimate goal is to ascertain and give effect to the reasonable expectations of the parties to the policy.  *Pompa v. American Family Mut. Ins. Co.*, 520 F.3d 1139, 1143 (10th Cir. 2008).  The strongest indication of the parties' reasonable expectations is the policy language itself, and thus, the Court's first step is to give effect to the plain and ordinary meaning of its terms, as those terms would be understood by a person of ordinary intelligence.  *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009), *citing Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo. 1996); *Pompa*, 520 F.3d at 1143. Colorado applies the "reasonable expectations doctrine," requiring that the Court read the policy consistent with the understanding of "ordinary insured" would have of it.  *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1048-51 (Colo. 2011).  In other words, the Court construes the policy language not as the insurer intended it to mean, but according to what the ordinary reader and purchaser would have understood it to mean. *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 496 (10th Cir. 1994).  The same rules apply to provisions in insurance policies that exclude certain

5

situations from otherwise available coverage; exclusionary terms must also be construed according to their plain and apparent meaning.  *Worsham Contr. Co. v. Reliance Ins. Co.*, 687 P.2d 988, 990 (Colo. App. 1984).  The Court must not construe terms of a policy in isolation; it must consider the policy as a whole.  *Simon v. Shelter General Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992).

When terms in a policy are susceptible to more than one reasonable interpretation, the Court must construe the ambiguous term against the drafter – the insurer – and in a manner that would promote, rather than deny, coverage.  *Blackhawk-Central City Sanitation Dist. v. American Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1191 (10th Cir. 2000).  However, a term is not ambiguous simply because the parties disagree as to its meaning, or where hypothetical or abstract sets of facts create the potential of ambiguity.  *Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo. App. 1996).

### C.  Policy language

For all practical purposes, the parties agree that the buildings in question were defectively designed and/or constructed, but that those defects remained latent and undiscovered for several years.  The deficiencies became patent due to the weight of the snow on the roofs of the buildings as a result of the December 2006 storm.  The weight of the snow on the roofs caused the defects to become manifest, most obviously through the displacement of the purlins. Larimer County seeks coverage for the required repairs to the buildings.

The Court begins by examining the operative language of Larimer County's policy with Travelers.  That policy provides that Travelers "will pay for direct physical loss or damage" to the property if that damage is "caused by or resulting from a Covered Cause of Loss."  There is

no dispute that the buildings in question are property covered by the policy, and that those buildings suffered a "physical loss or damage." The dispute centers on whether that loss was the result of a "Covered Cause of Loss."

The policy defines a "Covered Cause of Loss" to mean "risks of direct physical loss unless that loss is excluded" by other provisions in the policy. Although this language appears circular, this provision effectively provides that Travelers will pay for physical loss or damage to covered property resulting from <u>any</u> cause, <u>except</u> losses or damage resulting from causes falling within a specific policy exclusion. Thus, the Court turns to the provisions that, Travelers asserts, exclude coverage in this case.

Travelers begins with the "defective construction" exclusion. Section D, paragraph 3 of the policy provides that "The Company will not pay for loss or damage caused by or resulting from . . . faulty, inadequate, or defective . . . design [or] construction" (hereafter, "the exclusion"). This exclusion, however, is itself subject to an exception which states that "in the event that an excluded cause of loss . . . results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage" (hereafter, "the exception"). This exception language forms the core of the Larimer County's argument that the damage is covered by the policy: Larimer County contends that even if Neenan's construction was defective, the weight of snow on the roofs constituted a separate "Covered Cause of Loss" that brings the claim within policy coverage.

Having carefully examined the policy language and the parties' arguments, the Court finds that the policy language unambiguously excludes coverage of the damage to the purlins. The critical language provides that where "an excluded cause of loss" – here, defective

construction – "results in a Covered Cause of Loss," any "resulting loss" is covered.  In other words, although a construction defect, itself, is not covered by the policy, if the defect causes (*i.e.* "results in") a "Covered Cause of Loss," and that "Covered Cause" in turn results in property damage, the resulting property loss is covered.

As noted above, a "Covered Cause of Loss" is defined as a "risk[ ] of . . . loss," rather than a loss itself.  Thus, a "Covered Cause of Loss" is a phrase that describes the <u>cause</u> of a loss.  Substituting the simple word "cause" for the phrase "Covered Cause of Loss," and "defective design" for phrase "excluded cause of loss," the exception reads: "in the event that defective design  . . . results in a cause [of property damage], the Company will be liable only for such resulting loss or damage."  This language begins to make clear that the exception provides for coverage only when the excluded cause – defective design – becomes a new causal agent that itself causes resultant property damage. For example, if a defective design or construction of a roof causes a piece of the roof to detach and strike an adjacent building, the defect "resulted in" the creation of a new causal agent (the piece of roof) that itself proceeded to cause the damage to the adjacent building.  In such circumstance, no coverage would be provided for repair of the defectively designed building under the defective construction exclusion, but the exception to the exclusion would provide coverage for the damage to the adjacent building that was caused (indirectly) by the design defect.  Put another way, the defective construction "resulted in" the detached piece of roof becoming a separate "Covered Cause of Loss" to the adjacent building.

In the circumstances here, the defective construction of the roof may have acted as a causal agent (coupled with a second causal agent, the snow loading) to damage the purlins, but the purlins themselves have not become a "Covered Cause of Loss" that has resulted in

additional property damage.  Put differently, the damage to the purlins is the <u>loss</u> claimed by

Larimer County, not the <u>cause</u> of some other losses or property damage.  Had a displaced purlin,

for example, fallen and damaged to the floor of the building, the policy would cover damage to

the floor.  But where, as here, the claimed damage is the displacement of the purlins itself, the

unambiguous language of the exclusion precludes coverage.

   This construction gives meaning to all of the applicable provisions of the Policy and is

consistent with cases cited by Larimer County.  For example, Larimer County cites to *RK

Mechanical, Inc. v. Travelers Property Cas. Co.*, 2011 WL 2394921 (D.Colo. Aug. 1, 2011) (slip

op.), a case involving effectively identical policy language.  There, the plaintiff had installed

plumbing work using flanges from a particular manufacturer.  Some of those flanges failed due

to manufacturing defect, causing water to leak from the plumbing and damage lower floors of the

construction.  After discovering the defective flanges, the plaintiff was forced to replace the

flanges and redo much of the plumbing work, incurring additional cost and expense.  The

plaintiff sought coverage from Travelers on an insurance policy with a similar language as that at

issue here.  The parties apparently agreed that "the costs to remediate and repair covered

property damaged by the water which escaped the plumbing system . . .falls within the

[exception to the construction defect exclusion]," and Travelers paid benefits to the plaintiff for

those damages.  *Id.* at *6.  But the court found that the costs to remediate the defective flanges

themselves were not covered by the policy, as "the cost of making good on faulty work or

defective products is not contemplated nor covered by the policy at issue."  *Id.*  The court stated

that the exception language[4] "does not reinsert coverage for excluded losses, but rather, reaffirms

---

[4]The parties there referred to the exception language as the "ensuing loss provision."

coverage for secondary losses ultimately caused by excluded perils." *Id.*  Later, the court

repeated this same concept in slightly different wording: the exclusion language "does not cover

loss caused by the excluded peril [*i.e.* defective construction or manufacture]; it covers loss

caused to the property wholly separate from the defective property itself, in this case the

escaping water, not the cracked flange." *Id.* at *7.[5]

Larimer County's interpretation of the Policy suffers from several flaws.  Most notably, it

requires that  the word "Cause" be read out of the phrase "Covered Cause of Loss" – in Larimer

County's argument, if the defective construction "results in . . . loss," the exception applies.  It

also disregards the temporal sequence suggested by the exception's use of variants of the word

"result" in two separate places: the exception applies when the excluded cause "results in" a

cause, and that cause brings about "resulting loss or damage."  This describes a temporal

---

[5] Larimer County highlights the "reaffirms coverage for secondary losses ultimately caused by excluded perils" passage from *RK Mechanical,* but misperceives the court's meaning. The court's conclusion in *RK Mechanical* is identical to the conclusion reached by this Court here: the defective construction exclusion does not prevent coverage where the failure of defective construction unleashes a new causal agent that itself brings about additional property damage.  In *RK Mechanical,* the defective flange (the defective construction) unleashed a new causal agent (the water) that proceeded to cause additional property damage (flooding and water damage); in the hypothetical case discussed above, derived from the facts here, the defective roof design (the construction) unleashed a new causal agent (a displaced purlin that falls) that proceeds to cause additional property damage (to the floor).  But *RK Mechanical* refused to extend coverage to the plaintiff's need to repair or remediate the defective construction itself. Just as the plaintiff in *RK Mechanical* was not entitled to coverage for the costs of removing or remediating the defectively-manufactured flanges, Larimer County is not entitled to coverage for the costs of repairing or remediating the defectively-constructed roofs.  In this sense, the "secondary losses ultimately caused by excluded perils" passage that Larimer County relies upon is not referring to damage resulting <u>directly</u> from the defective construction (repairs to the cracked flange or the dislocated purlin), but rather, to damages to "property wholly separate from" (the flooded basement, the damaged floor) the defective construction.  Thus, *RK Mechanical* supports the Court's conclusion, not Larimer County's position.

sequence with at least two events occurring successively once the construction defect manifests itself (*e.g.* in the example above, the defect <u>results in</u> damage to the purlin, and the damage to the purlin <u>results in</u> damage to the floor), whereas the facts presented here entail only a one-step temporal sequence in which the construction defect manifests itself, resulting in displacement of the purlins.  More importantly,  Larimer County's interpretation would severely limit the unambiguous language of the  construction defect exclusion.  Many – perhaps most – construction defects are latent, manifesting themselves only when some post-construction event reveals that the building's design is inadequate to deal with conditions that the building should normally withstand.  If, as Larimer County argues, coverage exists when a "Covered Cause of Loss" like snow loading (or wind loading, or earth movement, or humidity, etc.) acts in combination with defective construction to cause a latent defect to manifest itself, most instances of defective construction would thus find coverage under the policy.  This is clearly inconsistent with the reasonable expectations that a person reading the construction defect exclusion would have, given that exclusion's general provision that damage resulting from construction defects is not covered.

Larimer County also argues that its construction of the policy language comports with the testimony of Traveler's corporate representative during his deposition.  A witness' interpretation of policy language would be relevant, if at all, only if that language was somehow ambiguous, a situation this Court finds is not present here.  *See Fort Lyon Canal Co. v. High Plains A & M, LLC*, 167 P.3d 726, 728–29 (Colo.2007).  But even assuming that Travelers' corporate representative's interpretation of the policy was relevant here, the Court finds that the deposition exchange does not clearly support Larimer County's position.  The representative was

asked about the exception to the defective construction exclusion in the following exchange:

> Q: So if any of those excluded items – whether defective construction and the like – physically damaged the building, they automatically become a covered cause of loss and, therefore, fall within the exception to the exclusion, true?

> [ . . . ]

> A: It may.

Putting aside the fact that the representative's answer is itself conditional, the question posed to the representative was not phrased in such a way that an affirmative response necessary indicates agreement with Larimer County's position.  As discussed above, the Court's interpretation of the policy language permits hypothetical situations in which defective construction does result in damage that falls within the policy's coverage.  The question posed to the representative is susceptible to an interpretation in which precisely this situation is being described: defective construction results in a piece of the building failing, and that failing portion of the building in turn causes further physical damage, thus "automatically" becoming a covered cause of loss.  Because the deposition exchange, even if relevant, is not necessarily inconsistent with the policy interpretation described above, the Court finds that this exchange does not aid Larimer County.

Accordingly, the Court finds that the damage to the buildings is not covered by the policy as a result of the defective construction exclusion.

It is not clear to the Court whether a finding that the policy's "defective construction" exclusion operates to preclude coverage here is sufficient to dispose of the question of coverage presented by the parties, or whether it is necessary for the Court to also find that coverage is similarly excluded under the "building collapse" and "ordinance or law" exclusions as well. Neither party has briefed the issue of whether the Court must simply find that <u>one</u> of the

12

proffered exclusions applies or whether the Court must find that <u>all</u> of the proffered exclusions apply before the Court can grant summary judgment.

It appears to the Court that the other exclusions are offered as alternative theories to justify a limit in coverage. Neither party has argued that their interpretation is essential to or would negate the provisions of the contract that have been analyzed. Thus, it does not appear necessary to explore the meaning of other possibly applicable exclusions.

Similarly, because the Court has found that, based on the undisputed facts herein, Travelers has no obligation to cover the repair costs for the displaced purlins in the additional buildings, the Court need not reach Larimer County's counterclaims that are predicated upon Travelers' failure to pay benefits provided by the Policy. Thus, it appears that there are no remaining disputes between the parties that survive.

<u>**CONCLUSION**</u>

For the foregoing reasons, Larimer County's Motion for Partial Summary Judgment **(#40)** and Travelers' Motion for Summary Judgment **(# 41)** are both **GRANTED IN PART**, insofar as the Court finds that there are no genuine disputes of fact requiring trial and that it is appropriate to rule on the claims herein as a matter of law. As a matter of law, Travelers is entitled to summary judgment on both its claim for a declaratory judgment that no coverage is

warranted under the Policy for the claimed loss and on Larimer County's counterclaims.  The

Clerk of the Court shall enter judgment in favor of Travelers on all claims herein and shall close

the case.

Dated this 29th day of March, 2012

BY THE COURT:

Marcia S. Krieger
United States District Judge